**UNITED STATES v. 462 BAGS OF FLOUR (TEXAS FLOUR MILL, Inc., Claimant).**

**No. 2460.**

District Court, W. D. Louisiana, Lake Charles Division.

Feb. 28, 1934.

Philip H. Mecom, U. S. Atty., and J. Fair Hardin, Asst. U. S. Atty., both of Shreveport, La.

Modisette & Adams, of Jennings, La., and Pujo, Bell & Hardin, of Lake Charles, La., for defendant.

DAWKINS, District Judge.

This is a proceeding under the Pure Food and Drugs Act (21 USCA § 1 et seq.), in which certain flour was seized and sought to be condemned because of its alleged misbranding, in that it was short in weight; each sack or bag containing substantially less than the 24 pounds stamped thereon. After seizure, the Texas Flour Mills, of Galveston, Tex., appeared, and, without admitting the shortage, applied to bond the seizure for the purpose of reweighing and restamping it, if necessary, in order to conform to the law. The agents of the government refused to participate in this course, unless the claimant would admit or confess the violation of the law, and, inasmuch as the term of court in the division where the matter arose had been held and there would be no sitting until the middle of December, the court permitted the claimant, notwithstanding the objection of the agents of the Department of Agriculture, to release the flour on bond, on condition that it be reweighed and the correct weight stamped thereon. This was done, the flour was turned over to the claimant, and has been disposed of. The matter has now been submitted to the court, after a waiver of the jury, upon an agreed statement of facts and other evidence. I find the facts as stated in the stipulation and as follows:

The flour was shipped from Galveston, Tex., to Jennings, La., on May 17, 1933, and reached the latter place on May 20th. On May 26th it was inspected by an agent of the Department of Agriculture, who weighed some of the sacks and found that they were short not to exceed 5 ounces to the bag. They were all reweighed after this proceeding was instituted in compliance with the terms of the order permitting the bonding, and showed an average shortage of 4.62 ounces per sack of 24 pounds. Out of the total of 462 bags, 41, or less than 10 per cent., contained 24 pounds, or more, and only 5 came up to the 24 pounds and 3 ounces, adopted as standard in the reweighing.

On the day the inspector weighed the sample sacks, prior to seizure, to wit, May 26th, the report of the Weather Bureau for Jennings showed a rainfall there of 2.77 inches. This was only nine days after the shipment from Galveston on May 17th, and the distance between those points is comparatively short. While it is not specifically shown in the proof, we take it, in view of the quantity, the shipment must have been made in a box car which went to destination without further handling except the unloading. It is a fact that the weight of flour is influenced by climatic conditions, particularly moisture and the extent to which it is handled. However, in this case, it was promptly inspected; that is, within six days after its arrival at destination and on a day when there was a heavy rain at Jennings. It does not seem reasonable that there could have been a loss of approximately 5 ounces to the sack, had they been up to the requirement when shipped. It is significant that more than 90 per cent. of the bags were below weight where less than 10 per cent. came up to standard. Counsel contends that the weather was hot and dry during the months of May, June, and July, 1933. From the 20th to the end of May it averaged about 90° and rained five out of eleven days, a total of 4.24 inches. During June the weather averaged a little warmer, and the precipitation was 3.63 inches, it having rained as follows: On the 10th, 1.72″, the 11th, .34″, the 12th, .73″, the 21st, .04″, the 26th, .08″, and the 28th, .72″; there was no more rain until July 9th, when .10 of an inch fell, yet the average weight of the entire lot of flour on the 10th of that month was short approximately the same amount per sack as those weighed by the inspector on May 26th. It is true that an officer of the company testified as to the method of weighing, testing the sacks, etc., but I do not believe this sufficient to overcome the other facts which I have mentioned. The rules of the Kansas City Board of Trade were introduced in evidence, showing a permissible "variation" in the trade of 2 per cent; whereas in this instance the average shortage was 1.017 per cent. However, the trouble here is that there was very little "variation," and more than 90 per cent. was short. The officers of the claimant were asked by the attorney for the government why some allowance was not made for climatic conditions and for loss from handling, and the point appears to have been evaded by the consistent answer that it was impossible to tell how much weight would be lost from those causes, because of the drying out of moisture, handling, etc. Not once did they state that any allowance was made for these factors, although they were well recognized in the trade. It seems to have been the view of the claimant that it should place only the exact amount of 24 pounds in the bags when packing for shipment, although the government regulations permitted a moisture content of 15 per cent., and the consumer would be left to absorb whatever shortage there might be if it dried out or was lost from ordinary handling. In this instance, however, I do not think it reasonable, under the circumstances, that the flour could have lost so consistently the amount which was shown.

There will be judgment for the plaintiff condemning the claimant to pay costs, with the right of the government to proceed against the release bond if not paid.

Proper decree should be presented.